UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

PICACHO HILLS UTILITY COMPANY, INC.,    Case No. 13-10742 tl7

    Debtor.

CLARKE C. COLL,

    Plaintiff,

v.    Adv. No. 16-01007 t

PICACHO HILLS DEVELOPMENT COMPANY, INC.,

    Defendant.

## OPINION

In this action Plaintiff seeks to recover $268,000 and certain water rights. Defendant opposes the requested relief. The parties filed cross motions for partial summary judgment on discrete issues of law. Having reviewed the pleadings and summary judgment papers, the Court will grant partial summary judgment that it has jurisdiction over all claims, and that neither the defendant nor the debtor was required to seek Court approval for actions taken during the § 305(a)[1] suspension period.

## I.    FACTS

For the limited purpose of ruling on the summary judgment motion, the Court finds there is no genuine dispute about the following facts:

Debtor was a public utility, providing water and sewer service in Dona Ana County, New Mexico. Defendant Picacho Hills Development Company, Inc. ("Development Co.") is a New

---

[1] Unless otherwise noted, all statutory references are to 11 U.S.C.

Mexico corporation.

### A. Sale Proceeds From Parcel A.

Beginning in 1979, Development Co. developed a number of subdivisions in Dona Ana County. Development Co. provided water and sewer services to the subdivision residents using certain of its water rights, water tanks, and land. The utility services were provided without approval of the New Mexico Public Utility Commission ("Commission").[2]

In 1991, Blanco formed the Debtor and became its principal officer. Debtor filed an application with the Commission to become a regulated water and sewer utility, serving the subdivisions developed by Development Co. Mr. Blanco testified on behalf of Development Co. at a Commission hearing on the utility application.

On July 30, 1993, a Commission hearing officer issued a recommended decision that states, inter alia:

> [Development Co.] agrees to transfer ownership of 2,260 acre feet per annum of water rights to [Debtor] for the operation of the utility systems, along with all utility assets owned by [Development Co.].
> …
> The public interest clearly requires that all water and sewer assets be unconditionally transferred to [Debtor] free and clear of any liens, security interests, or other encumbrances.
> …
> The Presiding Officer recommends that the Commission ORDER as follows: … [Development Co.] shall unconditionally convey and transfer all water and sewer assets to [Debtor] free and clear of any liens, security interests, or other encumbrances…. Within sixty (60) days of the entry of the Commission's Final Order in this case, [Debtor] shall file with the Commission written verification, under oath, of the conveyance of assets as required by this Order.

(the "Certification Decision"). The Commission adopted the Certification Decision in all material respects.

---

[2] The agency later became the New Mexico Public Regulation Commission.

At the time of the Certification Decision, Development Co.'s water and sewer utility assets included a parcel of real property on which a water tank was located (the "Former Water Tank Parcel"). Debtor used the Former Water Tank Parcel to provide water to the subdivision residents.

Fifteen years later, in October 2008, the Commission began an investigation into Debtor's operations. At the time, Blanco was a principal of the Debtor and the secretary, a director, and registered agent of Development Co. The Picacho Hills Property Owners' Association ("PHPOA") was also involved in the investigation.

In a recommended decision that followed the investigation, issued May 26, 2010 (the "Investigation Decision"), the Commission hearing officer found:

> The Commission ordered Development Co. to convey all utility assets to [Debtor]. PHPOA maintains that Development Co. never conveyed [Former Water Tank Parcel] to [Debtor], but that the land became Lots 46 and 47 of Fairway Townhomes Subdivision, which Development Co. conveyed to [a third party]….[The third party] sold Lot 46 for $84,000 and PHPOA assumes that [third party] also sold Lot 47 for $84,000, for a total of $168,000 for the two lots. PHPOA urges the Commission to order Blanco Development to pay [Debtor] $168,000, which it characterizes as the market value of the [Former Water Tank Parcel] that should have belonged to [Debtor].
> …
> [Former Water Tank Parcel] should have belonged to [Debtor] at the time Development Co. sold it. Therefore, the proceeds from Development Co.'s sale of the land should have gone to [Debtor] and should be returned to [Debtor]. However, Blanco Development should not be ordered to return the money because Blanco Development did not receive the money; it is Development Co. that received the money, and it is Development Co. that should be required to return the money to Debtor.

The Commission hearing officer also observed that Development Co. was an affiliate of Debtor between at least December 2008 and February 2009 because they were both under the control of Blanco.

The Commission adopted the material portions of the Investigation Decision on August 12, 2010, and ordered:

> Within ninety days of issuance of this Final Order, [Development Co.] shall pay $168,000 to [Debtor]. Within ninety-five days of issuance of this Final Order, Stephen Blanco shall file a statement in this docket, supported by affidavit, verifying the payment.

Blanco never filed a verification, as Development Co. never made the payment.

### B. The Receiver Action and the Bankruptcy Case.

On September 2, 2010, Bank of the Rio Grande filed an action against Debtor in New Mexico's Third Judicial District Court, commencing no. D-307-CV-201002416 (the "State Court Action"). The bank sought, inter alia, the appointment of a receiver. Robert Martin was appointed as Receiver on November 14, 2011. His main duties were to operate the utility and find a buyer for its assets. The Receiver eventually negotiated a sale of the utility assets to Dona Ana Mutual Domestic Water Consumers Association ("Dona Ana WCA") for $2,250,000. When the agreement was reached, Debtor was using in its utility operations a parcel of real property improved with a water tank (the "Current Water Tank Parcel").

Debtor filed this bankruptcy case on March 7, 2013, before the Receiver could complete the sale. The Receiver moved the Court to abstain from the case under § 305. By an order entered April 26, 2013, the Court granted the motion as follows:

> This Chapter 11 case shall be suspended pursuant to 11 U.S.C. § 305(a)(1) until after the Receiver has sold the receivership assets in accordance with a court order entered in the action pending in the Third Judicial District Court, Dona Ana County, New Mexico, entitled *Bank of Rio Grande v. Picacho Hills Utility Company, Inc., et al.*, Case No. D-307-CV-201002416 (the "Receiver Action");
> 
> Approval by this Court of any Receiver asset sale shall not be required;
> …
> It is the intention of the Court to allow Debtor to finalize the liquidation of its estate and effect distribution in this Court. After the Receiver's sale has been completed and the state court judge in the Receiver Action has ruled on any fee applications, the net proceeds should be tendered to the Court registry, unless alternative arrangement are made that are acceptable to Debtor's major creditors or approved by the Court;

> To the extent, if any, any Bankruptcy Code section or Bankruptcy Rule (e.g. § 362(a)) would otherwise apply during the suspension period, the Court hereby modifies and/or suspends such Code sections and/or rules, so the parties may have unfettered freedom to pursue (or object to, as the case may be) any proposed asset sale in the Receiver Action[.]

Doc. 88 in case no. 13-10742 (the "Suspension Order").

    C.    <u>Sale of the Current Water Tank Parcel</u>.

After the case was suspended, the parties returned to state court so the Receiver could complete the utility asset sale. While the Receiver was finalizing the sale, the parties discovered that Debtor may not have title to the Current Water Tank Parcel. According to the Investigation Decision, Debtor acquired the parcel in 1999 and conveyed it to Development Co. in 2000.[3]

Dona Ana WCA took the position that the Current Water Tank Parcel was among the utility assets to be conveyed in exchange for the $2,250,000 purchase price.

To preserve the deal, Dona Ana WCA agreed to pay Development Co. $100,000 and certain water rights in exchange for any interest Development Co. had in the Current Water Tank Parcel (the "Side Agreement"). At the same time, the Receiver agreed to reduce the purchase price

---

[3] The Trustee alleges that the 2000 conveyance to Development Co. was void because Debtor did not obtain Commission approval, in violation of N.M.S.A. § 62-6-12. That statute provides in part:
> A.    With prior express authorization of the commission, but not otherwise:
> . . .
> (4) any public utility may sell, lease, rent, purchase or acquire any public utility plant or property constituting an operating unit or system or any substantial part thereof; provided, however, that this paragraph shall not be constructed to require authorization for transactions in the ordinary course of business; and
>
> B.    Any consolidation, merger, acquisition, transaction resulting in control or exercise of control, or other transaction in contravention of this section without prior authorization of the commission shall be void and of no effect.

For purposes of this opinion, the Court makes no determination who owned the Current Water Tank Parcel when the Receiver was negotiating with Dona Ana WCA.

for the utility assets by $100,000. Neither the Debtor nor the Receiver was a party to the Side Agreement, but both were aware of the deal.

By an order entered May 13, 2013, the state court approved the sale of the receivership assets to Dona Ana WCA for $2,150,000:

> Development Co. and Dona Ana … have agreed to [the Side Agreement] whereby, inter alia, clear title to [the Current Water Tank Parcel] is conveyed to Dona Ana … and Dona Ana pays Development Co. $100,000 directly for [the parcel]. The Sales Agreement was duly amended to reduce the purchase price by $100,000…. This reduction in the purchase price is fair and appropriate and is approved by the Court because it permits the buyer to receive clear title to essential portions of the water and sewer systems. The Court finds that because the Receiver is not a party to the [Side Agreement], the Court need not approve [it] for it to be effective.

The parties did not seek this Court's approval of the Receiver's sale to Dona Ana WCA, the price reduction from $2,250,000 to $2,150,000, or payment to Development Co. for the Current Water Tank Parcel.

D.     The Reactivated Bankruptcy Case.

On January 6, 2014, the Court reactivated the bankruptcy case, after the Receiver deposited $726,191.41 in net proceeds from the utility asset sale. The case was converted to chapter 7 about nine months later, and Clarke Coll was appointed the chapter 7 trustee (the "Trustee").

On February 12, 2016, the Trustee filed this adversary proceeding, asserting two claims. First, the Trustee brought a § 542 claim, seeking turnover of $168,000 (the value of the Former Water Tank Parcel) and the proceeds from the sale of the Current Water Tank Parcel. Second, the Trustee brought a § 549/§ 550 claim, seeking to recover the Current Water Tank Parcel proceeds as an unauthorized post-petition transfer.

The parties filed cross motions for summary judgment, raising issues relating to jurisdiction, the preclusive effect of the Commission's findings, and whether Court approval for a post-petition transfer is required while the case is suspended pursuant to § 305.

## II. DISCUSSION

### A. Summary Judgment Standards.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Rule 56 applies in adversary proceedings. *See* Fed. R. Bankr. P. 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the [trial] court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant carries this burden, Rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *F.D.I.C. v. Lockhaven Estates, LLC*, 918 F. Supp. 2d 1209, 1231 (D.N.M. 2012) (citing *Celotex*). Further, the party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citing *Celotex*, 477 U.S. at 324).

To deny a motion for summary judgment, there must be genuine fact issues that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A mere "scintilla" of evidence will not avoid summary judgment. *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993). Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. *See Anderson*, 477 U.S. at 251; *Vitkus*, 11 F.3d at 1539.

### B. Jurisdiction.

The Trustee seeks to establish this Court has jurisdiction over his claims against Development Co. Although Development Co. challenged jurisdiction in its answer, it appears to have conceded the issue on summary judgment. In any event, the Court has jurisdiction over claims under §§ 542 and 549, which both arise exclusively under the Bankruptcy Code. *See, e.g., In re Yellow Cab Cooperative Ass'n,* 185 B.R. 844, 847 (Bankr. D. Colo. 1995) (finding that an action under § 549 was within the exclusive jurisdiction of the bankruptcy court); *In re Garcia,* 507 B.R. 32, 43 (1st Cir. BAP 2014) (bankruptcy courts have jurisdiction over § 542 turnover claims). The Court therefore will grant the Trustee's motion for partial summary judgment on the jurisdiction issue.

C.     Preclusion Principles.

Development Co. seeks partial summary judgment that it is not bound by the Commission's findings in the Investigation Decision. Specifically, Development Co. asks that no preclusive effect be given to the findings that the sale proceeds from the Former Water Tank Parcel should have belonged to Debtor, and therefore must be paid to Debtor.[4] If binding, the findings appear to establish that Development Co. "owes a debt that is property of the estate and … is matured, payable on demand, or payable on order." 11 U.S.C. § 542(b); *In re Falzerano,* 454 B.R. 81, 84-5 (8th Cir. BAP 2011) (actions to collect a matured debt owed to the estate are governed by § 542(b)).

"Administrative adjudicative determinations may be given preclusive effect if rendered under conditions in which the parties have the opportunity to fully and fairly litigate the issue at

---

[4] Development Co. also disputes the Commission's finding that the Current Water Tank Parcel was an asset of the Debtor. While Commission found that Blanco conveyed the Current Water Tank Parcel to Development Co., it does not appear the Commission found it was an asset of the Debtor.

the administrative hearing." *Shovelin v. Central New Mexico Elec. Co-op, Inc.,* 850 P.2d 996, 1001 (N.M. 1993). Relevant factors include whether the parties "had the incentive to vigorously litigate the prior action," and whether procedural differences between the two proceedings would make it unfair to apply preclusion principles. *Id.* at 1002-3.

The only evidence before the Court is that Blanco controlled both Development Co. and Debtor in 2008. While probative, the evidence is insufficient to establish that Development Co. had the opportunity or incentive to fully litigate the issues before the Commission. The Court therefore will deny Development Co.'s motion for partial summary judgment on this issue, and determine the matter at trial.

> D. <u>Whether § 549 Applied During the Suspension Period</u>.

Development Co. also seeks partial summary judgment on the Trustee's claims under §§ 549 and 550. Those sections allow a trustee to avoid an unauthorized, post-petition transfer of estate property. Development Co. argues that because of the Suspension Order and § 305(a), Court approval was not required for the transfer of the Current Water Tank Parcel to Dona Ana WCA, and § 549 therefore does not apply.

>> 1. <u>11 U.S.C. § 305</u>. Section 305(a) provides in part:

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if - -
  (1) the interests of creditors and the debtor would be better served by such dismissal or suspension. . . .

Most cases addressing § 305(a) pertain to outright dismissal rather than suspension of proceedings. The few § 305 suspension cases typically discuss whether the Court should invoke the remedy.

>> 2. <u>Jurisdiction during the suspension period</u>. Suspension under § 305(a) divests the bankruptcy court of jurisdiction over the entire case during the suspension period. *See*

*In re Mazzocone,* 183 B.R. 402, 420 (Bankr. E.D. Pa. 1995) ("Pursuant to 11 U.S.C. § 305(a)(1), … we may exercise our discretion to temporarily relinquish jurisdiction over a case"); *In re Axl Industries, Inc.*, 127 B.R. 482, 484-5 (S.D. Fla. 1991) (a bankruptcy court should not take jurisdiction over a two-party state law dispute, and should instead abstain from the case under § 305); *Collier on Bankruptcy* ¶ 305.01[1] ("If [a party] seeks suspension of all proceedings within a case, section 305(a) should be invoked"); 9 Am. Jur. 2d Bankruptcy § 733 (By suspension of all proceedings in a case, § 305 permits the bankruptcy court to abstain "from jurisdiction over the bankruptcy case itself as opposed to a proceeding arising under the case or arising in or related to the case"); 9 Norton Bankr. L. & Prac. 3d § 171:5 (collecting cases and noting that § 305 is designed to enhance the bankruptcy court's power to abstain from accepting jurisdiction over the entire case).

Suspension typically is invoked to allow the state court to continue exercising jurisdiction over a pending state law matter. *See, e.g., In re Rookery Bay, Ltd.,* 190 B.R. 949, 951 (Bankr. M.D. Fl. 1995) (suspending a bankruptcy case to allow a pending appeal to be completed in state court); *In re Milestone Educational Institute, Inc.,* 167 B.R. 716, 724 (Bankr. D. Mass. 1994) (suspending bankruptcy case to permit state court to address unsettled issues of state receivership law).[5]

    3. <u>Applicability of other Code sections during the suspension period</u>. Only a handful of cases touch on whether the Bankruptcy Code continues to apply during the suspension period. At least one court treated suspension as equivalent to dismissal until the case is reactivated.

---

[5] *Cf In re L & M Video Prods., Inc*., 2007 WL 1847387 at *6 (Bankr. N.D. Ohio) (dismissing the case under § 305(a) due to the existence of a state receivership that had been pending for "over two years" and would have disposed of the debtor's assets had the debtor not filed bankruptcy); *In re Spade,* 258 B.R. 221, 236 (Bankr. D. Colo. 2001) (§ 305(a) dismissal ordered because the dispute was a "two-party case that started in state court").

*See In re Mazzocone,* 183 B.R. at 422 (suspending proceedings pursuant to § 305(a), the Court ordered "this case shall be considered and treated in all respects as if it were dismissed pending the status hearing referenced below").

Some courts have suggested that the automatic stay applies during the suspension period. *See In re Compania de Alimentos Fargo,* 376 B.R. 427, 440 (Bankr. S.D.N.Y. 2007) (implying in dicta that § 305(a) suspension may not terminate § 362/the automatic stay); *Milestone Educational Institute,* 167 B.R. at 724 (granting stay relief during the suspension period to allow a receivership action to continue in state court). Others point out that suspension preserves the petition date for purposes of calculating avoidance rights under chapter 5 of the Code. *See, e.g., Rookery Bay, Ltd.,* 190 B.R. at 951 (suspending rather than dismissing to preserve the preference period under § 547); *Milestone Educational Institute, Inc.,* 167 B.R. at 724 ("suspension of all activity in this case pursuant to 11 U.S.C. § 305 will preserve the bankruptcy petition filing date for purposes of bringing preference actions"). One court, *In re Duratech Industries, Inc.,* 241 B.R. 291, 299 (Bankr. E.D.N.Y. 1999), held that suspension does not relieve the debtor of its obligation to file operating reports or comply with the United States Trustee guidelines.

Based on the case law and the purpose of § 305, the Court concludes that the contours of suspension may be fashioned by a bankruptcy court to fit the needs of the case. Here, this Court relinquished jurisdiction to the state court so the parties would have unfettered freedom to pursue any asset sales proposed by the Receiver. Like in *In re Mazzocone*, the Suspension Order made clear that none of the Code sections or Bankruptcy Rules applied during the suspension period. It stated: "to the extent, if any, any Bankruptcy Code section or Bankruptcy Rule (e.g. § 362(a)) would otherwise apply during the suspension period, the Court hereby modifies and/or suspends such Code section and/or rules. . . ."

Further, the Suspension Order stated that "approval by this Court of any Receiver asset sale shall not be required." The transfer of the Current Water Tank Parcel was clearly part of the asset sale transaction; the Receiver reduced the purchase price to account for the transfer. Given the Suspension Order language and what happened during the sale, neither Debtor nor Development Co. had to obtain Court approval for the Side Agreement or the reduction in the Receiver sale purchase price. The "unauthorized" element of § 549(a)(2)(B) therefore is not met.

The Court also notes that § 549 only applies to property of the estate. At the time of the transfer, the Receivership estate held all of Debtor's property. If the Current Water Tank Parcel was a Receiver asset, no Court approval was required, per the Suspension Order. If it was not a Receiver asset (meaning it was not owned by Debtor at the time of the sale), then it could not have been property of the estate. Either way, the Trustee cannot recover the Current Water Tank Parcel under § 549.

### III. CONCLUSION

The Court has jurisdiction over Trustee's claims. There are triable issues of fact whether Development Co. is bound by the Commission order relating to the former Water Tank Parcel. However, Development Co. is entitled to partial summary judgment on the Trustee's § 549 claim because Court approval was not required before completing the conveyance contemplated under the Side Agreement. All other claims are preserved for trial, including the § 542 claims seeking turnover of the value and/or proceeds of the two subject parcels.

The Court will enter a separate order consistent with this opinion.

    Honorable David T. Thuma
    United States Bankruptcy Judge

Entered: March 21, 2017

Copies to:

Samuel Roybal
500 Marquette Ave. NW, Ste. 650
Albuquerque, NM 87102-5309

R Trey Arvizu, III
P.O. Box 1479
Las Cruces, NM 88004-1479