UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

PICACHO HILLS UTILITY COMPANY, INC.,            Case No. 13-10742 tl7

    Debtor.

CLARKE C. COLL,

    Plaintiff,

v.                                                                                        Adv. No. 16-01007 t

PICACHO HILLS DEVELOPMENT COMPANY, INC.,

    Defendant.

## **OPINION**

In this action, Plaintiff seeks to recover $268,000 and certain water rights from Defendant. In August 2017, the parties filed cross motions for partial summary judgment on discrete issues of law. Having reviewed the pleadings and summary judgment papers, the Court will grant Plaintiff's motion for the most part, and will deny Defendant's motion.

### I.     FACTS

For the limited purpose of ruling on the summary judgment motions, the Court finds no genuine dispute about the following facts:

Debtor Picacho Hills Utility Company, Inc., was a public utility, providing water and sewer services in Dona Ana County, New Mexico. Defendant Picacho Hills Development Company, Inc. ("Development Co.") is a New Mexico corporation.

Beginning in 1979, Development Co. developed a number of subdivisions in Dona Ana County. Development Co. provided water and sewer services to the subdivision residents, using

certain of its water rights, water tanks, and land. The utility services were provided without approval of the New Mexico Public Utility Commission (the "Commission").[1]

In 1991, Stephen Blanco formed Debtor and became its principal officer. Debtor filed an application with the Commission to become a regulated water and sewer utility, serving the subdivisions developed by Development Co. Mr. Blanco controlled Development Co. and testified on its behalf at the Commission hearing on the utility application.

On July 30, 1993, a Commission hearing officer issued a recommended decision that states, inter alia:

> [Development Co.] agrees to transfer ownership of 2,260 acre feet per annum of water rights to [Debtor] for the operation of the utility systems, along with all utility assets owned by [Development Co.].
> …
> The public interest clearly requires that all water and sewer assets be unconditionally transferred to [Debtor] free and clear of any liens, security interests, or other encumbrances.
> …
> The Presiding Officer recommends that the Commission ORDER as follows: … [Development Co.] shall unconditionally convey and transfer all water and sewer assets to [Debtor] free and clear of any liens, security interests, or other encumbrances…. Within sixty (60) days of the entry of the Commission's Final Order in this case, [Debtor] shall file with the Commission written verification, under oath, of the conveyance of assets as required by this Order.

The Commission adopted the recommendations in all material respects (the "Certification Decision").

At the time of the Certification Decision, Development Co.'s water and sewer utility assets included a parcel of real property on which a water tank was located (the "Former Water Tank Parcel"). Debtor used the Former Water Tank Parcel to provide water to the subdivision residents.

Fifteen years later, in October 2008, the Commission began an investigation into Debtor's

---

[1] The agency later became the New Mexico Public Regulation Commission.

operations. At the time, Blanco was a principal of Debtor and a secretary, director, and registered agent of Development Co. The Picacho Hills Property Owners' Association ("PHPOA") was also involved in the investigation.

On May 26, 2010, a hearing officer for the Commission issued an 88-page Final Recommended Decision. In it, the hearing officer found:

> The Commission ordered Development Co. to convey all utility assets to [Debtor]. PHPOA maintains that Development Co. never conveyed [Former Water Tank Parcel] to [Debtor], but that the land became Lots 46 and 47 of Fairway Townhomes Subdivision, which Development Co. conveyed to [a third party]....[The third party] sold Lot 46 for $84,000 and PHPOA assumes that [third party] also sold Lot 47 for $84,000, for a total of $168,000 for the two lots. PHPOA urges the Commission to order Blanco Development to pay [Debtor] $168,000, which it characterizes as the market value of the [Former Water Tank Parcel] that should have belonged to [Debtor].
> . . .
>
> A warranty deed shows that Mr. Moscato conveyed the [Current Water Tank Parcel] to [Debtor] on February 25, 1999. A second warranty deed shows that Mr. Blanco conveyed the [Current Water Tank Pacel] to [Development Co.] on November 7, 2000.
> . . .
>
> [Former Water Tank Parcel] should have belonged to [Debtor] at the time Development Co. sold it. Therefore, the proceeds from Development Co.'s sale of the land should have gone to [Debtor] and should be returned to [Debtor]. However, Blanco Development should not be ordered to return the money because Blanco Development did not receive the money; it is Development Co. that received the money, and it is Development Co. that should be required to return the money to Debtor.

The hearing officer also found that Development Co. was an affiliate of Debtor between December 2008 and February 2009, because Blanco controlled both.

On August 12, 2010, the Commission issued a Final Order, adopting the recommended decision with certain exceptions. Among the proposed decretal paragraphs the Commission adopted was the following:

> Within ninety days of issuance of this Final Order, [Development Co.] shall pay

> $168,000 to [Debtor]. Within ninety-five days of issuance of this Final Order, Stephen Blanco shall file a statement in this docket, supported by affidavit, verifying the payment.

(the "2010 Commission Order"). Blanco never filed a verification, as Development Co. never made the ordered payment.

On September 2, 2010, Bank of the Rio Grande filed an action against Debtor in New Mexico's Third Judicial District Court, commencing no. D-307-CV-201002416 (the "State Court Action"). The bank sought, inter alia, the appointment of a receiver. Robert Martin was appointed as Receiver on November 14, 2011. His main duties were to operate the utility and find a buyer for its assets. The Receiver eventually negotiated a sale of the utility assets to Dona Ana Mutual Domestic Water Consumers Association ("Dona Ana WCA") for $2,250,000. When the agreement was reached, Debtor was using in its utility operations a parcel of real property improved with a water tank (the "Current Water Tank Parcel").

Debtor filed this bankruptcy case on March 7, 2013, before the Receiver could complete the sale. The Receiver moved the Court to abstain from the case under § 305. By an order entered April 26, 2013, the Court granted the motion.

After the case was suspended, the parties returned to state court so the Receiver could complete the utility asset sale. While the Receiver was finalizing the sale, the parties discovered that Debtor did not have title to the Current Water Tank Parcel. Dona Ana WCA took the position that the Current Water Tank Parcel was among the utility assets that had to be conveyed in exchange for the $2,250,000 purchase price.

To preserve the deal, Dona Ana WCA agreed, on or about May 3, 2013, to pay Development Co. $100,000 and certain potential water rights, in exchange for any interest Development Co. had in the Current Water Tank Parcel (the "Side Agreement"). At the same time,

the Receiver agreed to reduce the purchase price for the utility assets by $100,000. Neither Debtor nor the Receiver was a party to the Side Agreement, but both were aware of the deal.

By an order entered May 13, 2013, the state court approved the sale of the receivership assets to Dona Ana WCA for $2,150,000:

> Development Co. and Dona Ana … have agreed to [the Side Agreement] whereby, inter alia, clear title to [the Current Water Tank Parcel] is conveyed to Dona Ana … and Dona Ana pays Development Co. $100,000 directly for [the parcel]. The Sales Agreement was duly amended to reduce the purchase price by $100,000…. This reduction in the purchase price is fair and appropriate and is approved by the Court because it permits the buyer to receive clear title to essential portions of the water and sewer systems. The Court finds that because the Receiver is not a party to the [Side Agreement], the Court need not approve [it] for it to be effective.

On January 6, 2014, the Court reactivated the bankruptcy case. The case was converted to chapter 7 about nine months later, and Clarke Coll was appointed the chapter 7 trustee (the "Trustee").

On February 12, 2016, the Trustee filed this adversary proceeding against Development Co., asserting two claims. First, the Trustee brought a § 542 claim, seeking turnover of the $168,000 ordered in the 2010 Commission Order, and the $100,000 Development Co. received from Dona Ana WCA. Second, the Trustee brought a §§ 549/550 claim, seeking to recover the Current Water Tank Parcel proceeds as an unauthorized post-petition transfer. On March 21, 2017, the Court granted summary judgment in Development Co.'s favor on the Trustee's §§ 549/550 claim.

## II.     DISCUSSION

### A.     Summary Judgment Standards.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

56. Rule 56 applies in adversary proceedings. *See* Fed. R. Bankr. P. 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and . . . [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant carries this burden, "Rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial." *F.D.I.C. v. Lockhaven Estates, LLC*, 918 F. Supp. 2d 1209, 1231 (D.N.M. 2012) (citing *Celotex*, 477 U.S. at 324). Further, the party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citing *Celotex*, 477 U.S. at 324).

To deny a motion for summary judgment, there must be genuine fact issues that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A mere "scintilla" of evidence will not avoid summary judgment. *See Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993). Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. *See Anderson*, 477 U.S. at 250-51; *Vitkus*, 11 F.3d at 1539.

    B.    <u>The Trustee's Claim for Turnover of $168,000</u>.

        1.    <u>Is the Former Water Tank Parcel Property of the Estate</u>? The Trustee first argues that the Former Water Tank Parcel is and always has been property of the bankruptcy estate because the Commission ordered Development Co. to convey it to Debtor in 1993. This argument must be overruled. True, the Commission ordered Development Co. to convey the parcel to Debtor, but Development Co. did not obey the order. The Trustee cited no authority that the Commission order automatically conveyed the Former Water Tank Parcel, nor has the Court found

any such authority. Development Co. violated the Certification Decision and is subject to the consequences of the violation, but Development Co. was not dispossessed of the Former Water Tank Parcel when the Commission entered the Certification Decision. Thus, the Former Water Tank Parcel is not and has never been estate property.

        2.      <u>Standing to Enforce the 2010 Commission Order</u>. The Trustee next argues that his turnover rights under § 542(b) allow him to collect the $168,000. Development Co. responds that the Trustee's claim to the $168,000 is based solely on the 2010 Commission Order, and that the Trustee lacks standing to enforce the order. N.M.S.A. § 62-12-1 provides in part:

> Whenever the commission shall be of the opinion that any person or utility is failing or omitting or about to fail or omit to do anything required of it by this act or by any order of the commission, or is doing anything or about to do anything, or permitting anything or about to permit anything to be done, contrary to or in violation of this act or of any order of the commission, it may direct the attorney general of New Mexico to commence an action or proceeding in the district court in and for the county of Santa Fe, or in the district court of the county in which the complaint or controversy arose, in the name of the state of New Mexico for the purpose of having such violations or threatened violations stopped and prevented either by mandamus or injunction.

The Court notes that the language is permissive ("it *may* direct the attorney general . . .") rather than compulsory or exclusive. There is no New Mexico case law on whether a utility that obtains a favorable Commission order may enforce it.

The concept of a private right of action is helpful to the analysis. In *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017), the Tenth Circuit discussed private rights of action to enforce federal statutes:

> "For a statute to create such private rights, its text must be 'phrased in terms of the persons benefited.' " *Gonzaga*, 536 U.S. at 283, 122 S. Ct. 2268 (quoting *Cannon [v. University of Chicago]*, 441 U.S. at 690 n.13, 99 S. Ct. 1946). Contrariwise, "[s]tatutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *[Alexander v.] Sandoval*, 532 U.S. at 289, 121 S. Ct. 1511 (quoting *[California v.] Sierra Club*, 451 U.S. at 294, 101 S. Ct.

1775); *see also Armstrong [v. Exceptional Child Center, Inc.]*, 135 S. Ct. at 1387 (plurality opinion of Scalia, J.) ("doubt[ing] ... that providers are intended beneficiaries ... of the Medicaid agreement," which *also* would have foreclosed their claimed "private right of action under federal law").

859 F.3d at 903.

Under New Mexico law, the following factors are used to evaluate whether legislation implies a private right of action:

> (1) Was the statute enacted for the special benefit of a class of which the plaintiff is a member? (2) Is there any indication of legislative intent, explicit or implicit, to create or deny a private remedy? and (3) Would a private remedy either frustrate or assist the underlying purpose of the legislative scheme?

*Cates v. Mosher Enterprises, Inc.,* 403 P.3d 687, 690 (N.M. App. 2017) (citing *Cort v. Ash*, 422 U.S. 66 (1975)).

Here, we have a state statute that is silent about a private right of action. The statute does not explicitly or implicitly deny a private remedy. The Commission Order specially benefits Debtor and no one else. Giving the Trustee standing to collect the $168,000 would assist the underlying purpose of the legislative scheme by making Development Co. do what the Commission twice ordered it to do. The Court concludes that, in the narrow context of Commission orders specially benefiting New Mexico utilities, such utilities have standing to enforce the orders.

The Trustee also relies on his rights under the Bankruptcy Code's turnover provisions to provide standing. Section 542(b) provides:

> (b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

"Section 542(b) creates an action for turnover of matured debts owed to a bankrupt estate." *In re National Enterprises, Inc.*, 128 B.R. 956, 959 (E.D. Va. 1991). Examples include debts owed for

accounts receivable, for entered judgments, or for money held in trust or escrow. *See id., citing In re Willington Convalescent Home, Inc.,* 850 F.2d 50, 52 n. 2 (2d Cir. 1988) (action to collect a money judgment is within scope of § 542(b)). *See also Acolyte Elec. Corp. v. City of New York,* 69 B.R. 155, 172 (Bankr. E.D.N.Y. 1986) (a turnover proceeding within § 542 is one that seeks "the collection rather than creation of, recognition or liquidation of a matured debt"). By contrast, unliquidated state law damage claims are not within the scope of § 542(b). *See Nat'l Enterprises*, 128 B.R. at 959, *citing Interconnect Telephone Servs. v. Farren,* 59 B.R. 397, 400–01 (S.D.N.Y. 1986). *See also In re Fontainbleau Las Vegas Holdings, LLC*, 417 B.R. 651, 666 (S.D. Fla. 2009), *aff'd*, 709 F.3d 1072 (11th Cir. 2013) ("the turnover provision . . . applies only to tangible property and money due to debtor *without dispute* which are fully matured and payable on demand.") (citing *In re Charter Co.*, 913 F.2d 1575, 1579 (11th Cir. 1990)) (emphasis added). "The application of section 542(b) focuses on 'the collection rather than the creation, recognition, or liquidation of a matured debt.'" Collier on Bankruptcy, ¶ 542.04 (16th ed.) (quoting *Porter-Hayden Co. v. First State Mgmt. Group, Inc. (In re Porter-Hayden Co.)*, 304 B.R. 725, 734 (Bankr. D. Md. 2004)).

"[T]he provisions of section 542(b) are sufficient to arrogate the general law concepts and transform them into bankruptcy law." *In re Kakolewski*, 29 B.R. 572, 574 (Bankr. W.D. Mo. 1983) (footnote omitted). *See also In re Southeastern Materials, Inc.,* 467 B.R. 337, 356 (Bankr. M.D.N.C. 2012) (quoting *Kakolewski*). Thus, even if the Trustee could not enforce the 2010 Commission Order in state court (and the Court holds that he could), the Bankruptcy Code's turnover provisions provide the necessary standing in this case.

The Court holds that the 2010 Commission Order is a final order that established a $168,000 debt.[2] The debt is past due, has been liquidated, and is subject to turnover. There is no

---

[2] If Development Co. filed a bankruptcy case, the estate would have a claim in the case. *See*

dispute about Development Co.'s obligation to pay it. The Trustee has standing to enforce the estate's turnover rights under § 542(b), and also has standing under state law to enforce the 2010 Commission Order.

        3.        <u>Statute of Limitations</u>. Development Co. argues that the statute of limitations has expired on its obligation to pay the $168,000, so the Trustee cannot enforce it. This argument fails. It may well be that no limitations period applies to Commission orders. Evidence for this latter point includes the lack of a limitations period in New Mexico's public utility statutes, N.M.S.A. § 62-1-1 et seq., and the fact that the Commission enforced its 1993 Certification Decision in 2010, 17 years after entry. *See also BP America Production Co. v. Burton,* 549 U.S. 84, 101 (2006) (finding a federal statute of limitations applicable only to judicial actions involving government contracts, and not to an administrative order of the Department of the Interior); *Alden Management Services, Inc. v. Chao,* 532 F.3d 578, 582 (7th Cir. 2008) ("Unless a federal statute directly sets a time limit, there is no period of limitations for administrative enforcement actions.").

Alternatively, the 2010 Commission Order is analogous to a final judgment of a court of record.[3] Under N.M.S.A. § 37-1-2, the limitations period for such judgments is 14 years.[4]

The claim to recover the $168,000 debt, filed 5¼ years after Development Co. violated the 2010 Commission Order,[5] is timely.

---

§ 101(5) (claim includes a matured right to payment). Development Co. therefore owes a matured "debt" to the estate. § 101(12) (debt means "liability on a claim").

[3] Commission hearings are on the record (N.M.S.A. § 62-11-2); pre-hearing discovery is allowed (§§ 62-10-8 to 62-10-11); the Commission hears witness testimony and admits documents into evidence (Id.); final Commission decisions, which must include findings of fact (§ 62-10-14), are subject to appellate review. Appeals of Commission decisions are taken in accordance with the New Mexico Rules of Appellate Procedure for Civil Cases. N.M.S.A. § 62-11-2.

[4] The limitations period for judgments issued by courts that are not of record is six years. N.M.S.A. § 37-1-3(A).

[5] The 2010 Commission Order required the $168,000 payment within 90 days after entry, or about November 12, 2010.

C.  Claim Based on the Current Water Tank Parcel.

Development Co. was paid $100,000 by Dona Ana WCA to quitclaim its interest in the Current Water Tank Parcel. The purchase price paid to the estate for the water utility assets was correspondingly reduced by $100,000. The Trustee now seeks a $100,000 judgment against Development Co., arguing that the purported 2000 conveyance of the parcel from Debtor to Development Co. was done without Commission approval and is void. Because of that, the Trustee argues that the $100,000 paid to Development Co. was for estate assets, and should be turned over to the estate.

N.M.S.A. § 62-6-12 provides:

A. With the prior express authorization of the commission, but not otherwise:
. . . .

   (4) any public utility may sell, lease, rent, purchase or acquire any public utility plant or property constituting an operating unit or system or any substantial part thereof; provided, however, that this paragraph shall not be construed to require authorization for transactions in the ordinary course of business.

B. Any consolidation, merger, acquisition, transaction resulting in control or exercise of control, or other transaction in contravention of this section without prior authorization of the commission shall be void and of no effect.
. . . .

There is no dispute that the Current Water Tank Parcel was conveyed in 2000 by Debtor to Development Co., and that neither party sought or obtained Commission approval for the conveyance. Further, there is no genuine dispute that the Current Water Tank Parcel is a "substantial part" of the water utility system sold to Dona Ana WCA. The conveyance cannot be viewed as an "ordinary course of business" transaction; without the parcel, the water utility could not function. The Court finds and concludes that the purported transfer of the Current Water Tank Parcel in 2000 was void and of no effect. Thus, Development Co. had nothing to sell to Dona Ana WCA in exchange for the $100,000 it received. The money should have been paid to the estate,

-11-

not to Development Co.

To the extent Development Co. received additional consideration from Dona Ana WCA for the Current Water Tank Parcel (e.g., additional water rights of some kind), such consideration also should be turned over to the estate. As the Court cannot determine based on the current record what additional water rights, if any, Development Co. received, that limited issue will be reserved for trial.

### III. CONCLUSION

The Trustee is entitled to a summary judgment requiring Development Co. to turn over the $168,000 ordered in the 2010 Commission Order, and also the $100,000 Development Co. collected from Dona Ana WCA. Summary judgment will be denied with regard to any potential water rights Development Co. may be entitled to receive from Dona Ana WCA. Development Co.'s summary judgment motion will be denied. The Court will enter a separate order consistent with this opinion.

_____

Honorable David T. Thuma
United States Bankruptcy Judge

Entered: December 1, 2017

Copies to:

Samuel I. Roybal
500 Marquette Ave. NW, Ste. 650
Albuquerque, NM 87102-5309

R. Trey Arvizu, III
P.O. Box 1479
Las Cruces, NM 88004-1479