UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

PICACHO HILLS UTILITY CO., INC.,                              No. 13-10742 tl7

    Debtor.

CLARK C. COLL,

    Plaintiff,

v.                                                             Adv. No. 16-01007 t

PICACHO HILLS DEVELOPMENT CO., INC.,

    Defendant.

## **OPINION**

Before the Court is plaintiff's claim to recover from defendant $100,000 and the value of certain water rights. Plaintiff's theory is that, post-petition, defendant improperly sold estate property and must pay the estate all consideration received. Defendant counters that the property was not estate property, so the claim fails. Defendant also argues that the sale was approved by a state court and cannot be collaterally attacked. After a trial on the merits, the Court concludes that the property at issue was indeed estate property; that no state court order or judgment prevents granting the requested relief; and that defendant is liable to plaintiff for $100,000 but not the value of the water rights.

On December 1, 2017, the Court entered a $168,000 money judgment against defendant on another claim. Defendant appealed the ruling to the district court, which affirmed the judgment on April 1, 2018. Nevertheless, at the trial held September 18, 2019, defendant asked the Court to revisit the issue and reduce the judgment substantially. The Court declines to do so.

I.     FACTS

The Court finds:[1]

Defendant Picacho Hills Development Company, Inc. ("Development Co.") is a real estate development company in Las Cruces, New Mexico. Debtor Picacho Hills Utility Company, Inc. ("Utility Co.") was a public utility that provided water and sewer services in Doña Ana County, New Mexico, from approximately 1993 to 2013. Both entities are or were owned by or affiliated with Carlos and Emma Blanco and their children, Stephen, Laurie, and Dee Blanco.

In 1979, Development Co. began developing residential subdivisions in an area west of Las Cruces now known as Picacho Hills. From its inception through the 1980s, Carlos, Emma, and Stephen Blanco owned and operated Development Co. During that time, Utility Co. had no assets or operations; Development Co. provided water and sewer services to the subdivisions.[2]

From 1979 through 2013, the Picacho Hills subdivisions were served by water wells owned by Development Co. or Utility Co. The wells pumped water into a large water storage tank, which was distributed by gravity flow to the houses in the subdivisions.[3]

---

[1] The Court took judicial notice of its docket in the main case and this adversary proceeding, as well as the dockets in the Receiver Action (defined below) and a 2010 receiver action filed against the debtor by the New Mexico Public Regulation Commission. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may sua sponte take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

[2] Development Co. owned some water rights at that time. In a 1983 filing with the Office of the State Engineer (the "OSE"), Development Co. declared itself the owner of 12,000 acre feet per year ("AFY") of water rights.

[3] The Picacho Hills water utility has always been a gravity flow system, which requires a large water storage tank at a high elevation. A main alternative is a system that uses pumps, rather than gravity, to supply the necessary water pressure. A pump system, which is more expensive, has never been used at Picacho Hills.

-2-
Case 16-01007-t    Doc 81    Filed 10/25/19    Entered 10/25/19 09:14:47 Page 2 of 14

On September 20, 1991, Utility Co. applied to the New Mexico Public Utility Commission ("PRC") [4] to be a regulated utility supplying water and sewer service to the Picacho Hills subdivisions. In September 1993, the PRC approved the application subject to the requirement that Development Co. transfer all of its utility assets and at least 2,260 AFY of water rights to Utility Co. The PRC required Utility Co. to certify under oath, within 60 days, that the transfers had been completed.[5]

Among the assets to be conveyed was real property upon which a water tank had been affixed (the "Old Tank Land"). Development Co. never conveyed the Old Tank Land to Utility Co. Instead, Development Co. eventually sold the land to a third party, who eventually resold it for $168,000.

In 1999 Utility Co. began an expansion project, by which time its existing water tank was old, leaking, and in need of repair or replacement. Further, the Old Tank Land was not high enough for the increased water usage Utility Co. projected. On February 25, 1999, Bright View Land Company deeded a parcel of land to Utility Co. (the "New Tank Land"). Development Co. wanted the New Tank Land, which was higher than the Old Tank Land, specifically for the construction of a new water tank that would replace the old tank. Shortly after the conveyance, Utility Co.

---

[4] So called because the state regulatory agency later became the New Mexico Public Regulation Commission.
[5] OSE records indicate that the water rights were not conveyed until May 1998, about four and a half years late.

demolished the old tank and built a new tank on the New Tank Land. Inexplicably, however,[6] on November 7, 2000, Utility Co. conveyed the New Tank Land to Development Co.[7]

On November 8, 1999, the OSE ruled on Development Co.'s request to change the location of one of its water wells. The OSE permitted the change in location but, as a condition to approval, reduced Development Co.'s inchoate water rights from 12,000 to 3,800 AFY.[8] The OSE noted that after Development Co.'s conveyance of 2,260 AFY to Utility Co. and another conveyance of 800 AFY to a third party, Development Co. retained 740 AFY of inchoate water rights.

On October 10, 2007, Utility Co. filed an application with the PRC to increase its water and sewer rates. The application prompted the PRC to investigate Utility Co.'s legal and regulatory compliance. In a 2010 final order on the application, the PRC found that Development Co. violated its 1993 order by failing to convey the Old Tank Land to Utility Co. The PRC ordered Development Co. to pay Utility Co. $168,000 as compensation for the violation.[9]

While the 2007 rate case was proceeding, Stephen Blanco's sisters began asserting that Stephen was breaching his trustee and other duties to them. By then, Stephen Blanco had become

---

[6] At the time, Stephen Blanco controlled both Utility Co. and Development Co. Transactions between the corporations were not at arms' length.

[7] The court finds that the new tank was constructed on the New Tank Land before the 2000 conveyance to Development Co. Regardless, it is clear Utility Co. needed the New Tank Land for its expansion plans and to continue to supply water to Picacho Hills. Had Utility Co. and Development Co. dealt with each other at arms' length, Utility Co. would never have conveyed the New Tank Land to Development Co.; the land was essential for fulfilling Utility Co.'s prime directive of supplying water to Picacho Hills.

[8] For purposes of this opinion, inchoate water rights can be put to beneficial use and perhaps be deemed "vested" rights by the OSE. Vested water rights are much more useful and valuable than inchoate water rights.

[9] There were many other findings of wrongdoing. The PRC's 2010 order was sharply critical of Stephen Blanco and his management of Utility Co. The PRC stated in the order that it would file a state court action seeking the appointment of a receiver for Utility Co.'s assets. The PRC also assessed fines against Utility Co. Utility Co. appealed the 2010 order to the New Mexico Court of Appeals and the New Mexico Supreme Court. Both appellate courts affirmed the 2010 order.

the sole owner of Utility Co. In March 2009, the Blanco family removed Stephen Blanco as an officer and director of Development Co.

On September 2, 2010, Bank of the Rio Grande filed a state court collection and foreclosure action against Utility Co., commencing cause no. D-307-CV-201002416 (the "Receiver Action"). Shortly thereafter, the PRC filed its own state court action. The two actions were consolidated into the Receiver Action. The state court appointed a receiver on November 14, 2011.

On September 4, 2012, the receiver filed a motion in the Receiver Action to sell Utility Co.'s assets to Dona Ana Mutual Domestic Water Consumers Association ("Dona Ana Water") for $2,250,000. The proposed sale was delayed when Utility Co. filed bankruptcy on March 7, 2013. On April 26, 2013, the Court granted Dona Ana Water's motion to abstain from the case to allow the sale to close.

While the parties were working on the sale, they discovered that Development Co., not Utility Co., owned the New Tank Land. To complete the transaction, on May 3, 2013, Development Co. and Dona Ana Water signed a Property and Water Rights Agreement (the "Side Agreement"), pursuant to which Development Co. agreed to convey the New Tank Land to Dona Ana Water for $100,000.[10] At the same time, the receiver agreed to reduce the purchase price of Utility Co.'s assets by $100,000.

Paragraphs 1, 2, 3, and 10 of the Side Agreement (the "Water Rights Paragraphs") address a different subject, i.e., water rights and water wells. The parties agreed that the first 384 AFY to be recognized by the OSE as "vested" would belong to Dona Ana Water. Next, the parties agreed

---

[10] The Side Agreement also refers to another parcel of property, denoted the "wastewater treatment site." However, the trial evidence shows that the wastewater treatment site land was owned by Utility Co. at the time, so the receiver was able to convey good title to Dona Ana Water. The site was added to the Side Agreement, presumably, so Development Co. could disclaim any interest in it. The Court finds that the $100,000 was paid for the conveyance of the New Tank Land, rather than for the disclaimer of any interest in the wastewater treatment site.

to work together to try to get the OSE to recognize an additional 933 AFY of water rights as vested.[11] Any such additional vested water rights would be divided equally between them. Third, the parties agreed that Development Co. would not use the water wells owned and used by Utility Co. Finally, the parties agreed that the water rights agreement was contingent on the OSE recognizing more than 384 AFY as vested.

The Water Rights Paragraphs were necessary to Dona Ana Water to ensure unfettered access to the water wells and to prevent disputes about ownership of water rights. For its part, Development Co. was not willing to give up its claim to the use of the wells without an agreement that would preserve its ability to try to perfect some of its inchoate water rights.

On May 13, 2013, the state court entered an order in the Receiver Action approving the asset sale to Dona Ana Water (the "Sale Order"). The Sale Order neither approved nor disapproved the Side Agreement.[12]

The sale to Dona Ana Water closed on or about January 6, 2014. The Court reactivated Utility Co.'s bankruptcy case at that time. On September 17, 2014, the Court converted the case to a chapter 7 case and the Trustee was appointed.

On February 12, 2016, the Trustee filed this adversary proceeding, seeking turnover of the still unpaid $168,000 for the Old Tank Land and a judgment to recover the $100,000 paid for the New Tank Land. The Trustee also sought a judgment for the value of water rights Development Co. received under the Side Agreement, alleging that the rights were additional consideration for the New Tank Land.

---

[11] The total, 1,317 AFY, came from the amount of water actually pumped from the wells in 2007.
[12] The Sale Order states: "The Court finds that because the Receiver is not a party to the Property and Water Rights Agreement, the Court need not approve the Property and Water Rights Agreement for it to be effective."

On December 1, 2017, the Court granted partial summary judgment for the Trustee, awarding him $168,000 for the Old Tank Land, $100,000 for the New Tank Land, and reserving the issue of water rights for trial.

Development Co. treated the Court's partial summary judgment as a final, appealable judgment and appealed to the district court. The district court, which also treated the partial summary judgment as a final judgment, upheld the Court's ruling on the $168,000 claim relating to the Old Tank Land. However, the district court reversed and remanded regarding the $100,000 judgment for the New Tank Land, holding that this Court made an improper adverse inference that the New Tank Land was a "substantial part" of the Utility Co.'s assets.[13] On September 18, 2019, the Court tried that issue and the issue of whether any water-rights benefit Development Co. obtained under the Side Agreement was additional consideration for the New Tank Land.

## II.   DISCUSSION

A.   <u>The Trustee's Claim Relating to the New Tank Land</u>.

1.   <u>The New Tank Land Was a Substantial Part of the Utility Co.'s Operating Unit or System</u>. The only issue remanded was whether the New Tank Land was a substantial part of Utility Co.'s operating unit or system. N.M.S.A. § 62-6-12 provides:

> A. With the prior express authorization of the commission, but not otherwise:
> . . . .
>   (4) any public utility may sell, lease, rent, purchase or acquire any public utility plant or *property constituting an operating unit or system or any substantial part thereof*; provided, however, that this paragraph shall not be construed to require authorization for transactions in the ordinary course of business.
> B. Any consolidation, merger, acquisition, transaction resulting in control or exercise of control, or other transaction in contravention of this section without prior authorization of the commission shall be void and of no effect.

---

[13] By remanding only the issue of whether the New Tank Land was a substantial part of Utility Co.'s operating unit or system, the district court by implication overruled Development Co.'s arguments that the Trustee lacked standing to bring the claim and that the Receiver owned the New Tank Land so Development Co. had nothing to sell. The Court therefore will not address the arguments.

. . . .

(emphasis added). The Trustee alleges that the Utility Co.'s conveyance of the New Tank Land to Development Co. in 2000, which was done without PRC knowledge or approval, violated N.M.S.A. § 62-6-12(A)(4) and therefore was void and of no effect under N.M.S.A. § 62-6-12(B). If that is correct, then the New Tank Land was property of the bankruptcy estate when Debtor filed this case on March 7, 2013. Further, the Trustee argues, Development Co.'s conveyance of the New Tank Land to Dona Ana Water was an unauthorized post-petition transfer, avoidable under 11 U.S.C. § 549(a).

Given Development Co.'s appeal of the "substantial part" finding, the Court was dismayed to find that Development Co. abandoned the issue at trial. Development Co.'s only attempt to show that the New Tank Land was not a substantial part of the water utility's operating unit or system was to ask a few cross-examination questions of the Trustee's expert witness. Predictably, the expert's answers hurt rather than helped Development Co.'s position. By the close of trial, it was apparent Development Co. had *no* evidence to support its argument that the New Tank Land was not a substantial part of the water utility system. All counsel could say in closing argument was that Development Co. did not concede the point.

In contrast, the Trustee introduced strong evidence that the New Tank Land was not merely a substantial part of the water system but was a crucial part. In fact, apart from water itself, Utility Co.'s most critical water utility asset in November 2000 was its water tank affixed to the New Tank Land. Without the land and tank, water could not be stored and delivered.[14] Residents would turn on their taps and get nothing; Picacho Hills would dry up. To state the obvious, the Court

---

[14] The Trustee's expert testified that not only was the New Tank Land essential because the Utility Co.'s gravity-fed system requires a large storage tank at a high elevation, but also because an ample supply of stored water is needed to fight fires.

holds that the New Tank Land was at the time of conveyance to Development Co. a substantial part of the Utility Co.'s operating unit or system.

The evidence on this point surprised no one, least of all the Court. It is not clear why Development Co. chose to appeal the Court's finding on this issue. Whatever the reason, it was not because Development Co. disagreed with the finding or thought there was a genuine dispute about this material fact. Trial of this non-issue was a waste of time and money.

The Court concludes that Utility Co.'s 2000 conveyance of the New Tank Land to Development Co. without PRC approval violated § 62-6-12(A)(4) and was void. Consequently, the land was part of the bankruptcy estate when Development Co. purported to convey it, post-petition and without Court authority, to Dona Ana Water.[15] The conveyance was contrary to 11 U.S.C. § 549. The purchase price should have been paid to the receiver, not Development Co. Under 11 U.S.C. §§ 549 and 550, the Trustee is entitled to a money judgment against Development Co. for $100,000.

2. <u>Does the *Rooker-Feldman* Doctrine Prevent the Court From Granting the Trustee Relief</u>? At trial, Development Co. argued that the *Rooker-Feldman* doctrine prohibits the Court from granting the Trustee relief because it would be tantamount to reversing, in part, the Sale Order.[16] The elements of the *Rooker-Feldman* doctrine are:

---

[15] Development Co's conveyance might have been limited to bare legal title, but whatever rights it had to convey, it received $100,000 in return.

[16] The argument was made for the first time in closing argument. Normally, the Court would not entertain an argument made at such a late date. However, objections based on subject matter jurisdiction are never waived, and regardless, federal courts have a duty to examine jurisdiction and may do so sua sponte. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230–31 (1990); *Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d 1220, 1223 (10th Cir. 2012); *Rector v. City and County of Denver*, 348 F.3d 935, 942 (10th Cir. 2003). The *Rooker-Feldman* doctrine limits, in certain limited circumstances, the subject matter jurisdiction of the federal trial courts. *See, e.g., Great Western Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 165 (3d Cir. 2010) (*Rooker-Feldman* "established the principle that federal district courts lack jurisdiction over suits that are essentially appeals from state court judgments.").

(i) a state-court loser; (ii) who is asking a federal district court; (iii) to review the correctness of a judgment rendered by a state court; and (iv) which judgment was rendered before the commencement of the federal proceeding.

*Dibble v. Wells Fargo Bank, NA*, 2016 WL 7508844, at *2 n.2 (D.N.M.), citing *Valdez v. Metro Prop & Cas. Ins. Co.*, 867 F. Supp. 2d 1143, 1167-68 (D.N.M. 2012); *see also Great Western Mining & Mineral,* 615 F.3d at 166 (setting out the same four requirements).

Applying these elements to the Trustee's claim, the *Rooker-Feldman* argument fails because the Trustee is not seeking to reverse, set aside, or invalidate the Sale Order. As explained above, the Sale Order does not approve the Side Agreement. Thus, any ruling by this Court would be consistent with the Sale Order. The Court concludes that *Rooker-Feldman* does not prevent the Court from entering a final judgment in the Trustee's favor on the New Tank Land claim.

3. <u>Is the Trustee Entitled to a Judgment for Any Water Rights Value</u>? In the Side Agreement, Development Co. and Dona Ana Water came to a resolution about the possible development of their respective water rights and the use of Utility Co.'s wells. According to the Trustee, any benefit Development Co. obtained from this agreement was additional consideration for the New Tank Land and rightfully belongs to the estate.

The Court has considered the Side Agreement carefully and has reviewed the testimony of Laurie Blanco on the issue.[17] The Court concludes that the Water Rights Paragraphs are independent of the paragraph concerning the sale of the New Tank Land. Similarly, the Court concludes that any benefit Development Co. received from the Water Rights Paragraphs is

---

[17] The Court finds that within the four corners of the Side Agreement, there was clearly no intent by the parties to transfer water rights as consideration for the New Tank Land. Alternatively, to the extent that the agreement can be considered ambiguous, the Court is permitted to consider parol testimony to resolve ambiguities. *See La Frontera Center, Inc. v. United Behavioral Health, Inc.*, 268 F. Supp. 3d 1167, 1199–1200 (D.N.M. 2017) (citing *C.R. Anthony Co. v. Loretto Mall Partners*, 817 P.2d 238, 241–242 (N.M. 1991)). The Court found Ms. Blanco's testimony credible and consistent with the text of the Side Agreement.

independent of the $100,000 consideration for selling the New Tank Land. The Court reaches this conclusion for the following reasons:

- Paragraph 10 of the Side Agreement makes the Water Rights Paragraphs contingent on the issuance of permits by the OSE, while the agreement to convey the New Tank Land in exchange for $100,000 is not;
- Development Co. agreed to provide an owner's policy of title insurance for the New Tank Land. The insured amount is $100,000, indicating that the total consideration was $100,000;
- The motivation for the agreement reflected in the Water Rights Paragraphs has nothing to do with motivation behind the New Tank Land conveyance; and
- The subject matter of the Water Rights Paragraphs is independent of the subject matter of the New Tank Land paragraph. The matters could have been in separate contracts.

The Trustee failed to carry his burden of proving that the Water Rights Paragraphs provided Development Co. with additional consideration for the New Tank Land.

B.   <u>Defendant's Request for Reconsideration of the $168,000 Judgment</u>.

At trial, Development Co. asked the Court to reconsider its partial summary judgment in favor of the Trustee on the $168,000 claim. In support of this position, Development Co. urges that it was not a party to the PRC proceeding so it would not be fair to enforce the order against it. Further, Development Co. argues that $168,000 greatly overstates the value of the Old Tank Land. For the reasons that follow, it would be improper to revisit the judgment.

1.   <u>The Judgment is Final</u>. On December 1, 2017, the Court entered a partial summary judgment in this proceeding, ordering Development Co. to, inter alia, "turn over to Plaintiff $168,000, as previously ordered by the New Mexico Public Utility Commission in its 2010 Order, which is referred to in the Opinion." Development Co. appealed the order to the district court.[18]

---

[18] Technically, the order appealed from was not a final order. *See* Fed. R. Civ. P. 54(b). Nevertheless, Development Co. filed its appeal under 28 U.S.C. § 158(a)(1), which governs appeals of final judgments. The district court did not question Development Co.'s treatment of the judgment as a final judgment.

The Court, meanwhile, issued a transcript of judgment that included this amount. The district court upheld the $168,000 award. Given that the judgment has been treated as final by the parties and the appellate court, it should continue to be treated as such. Furthermore, having asserted that the judgment is final for the purposes of appeal, Development Co. is estopped from now arguing that the judgment is interlocutory. *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (judicial estoppel is a doctrine that prohibits "parties from deliberately changing positions according to the exigencies of the moment") (quoting *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993)); *Anderson v. Seven Falls Co.*, 696 Fed. App'x 341, 345–46 (10th Cir. 2017) (to the same effect); *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007) (to the same effect); *In re Tres Hermanos Dairy, LLC*, 2014 WL 176772, at *8 (Bankr. D.N.M.) (same, citing *Eastman*).

    2.    <u>The District Court Has Already Addressed the Argument</u>. Further, while this Court did not consider the issue in its summary judgment ruling, the district court did. In his Proposed Findings and Recommended Disposition, the magistrate judge proposed to find:

> The only question in determining whether the Commission Order is sufficiently analogous to a money judgment is, therefore, whether the Development Company had a full and fair opportunity to litigate the issues addressed therein before the Commission. The Court concludes that it did, for several reasons. First, the proceedings before the Commission were of record. See NMSA 1978 § 62-11-3. Likewise, the Development Company could have appealed the Commission Order to the New Mexico Supreme Court. NMSA 1978 § 62-11-1. Such appeals are governed by the New Mexico Rules of Appellate Procedure for Civil Cases. NMSA 1978 § 62-11-2. Moreover, the proceedings before the Commission clearly show that Development Company had the opportunity to litigate the existence of the $168,000.00 debt. Therefore, the Commission Order created a debt, that was matured and payable on order, and the debt is subject to turnover under Section 542(b).

The findings were adopted in the district court's Memorandum Opinion and Order. Development Co. did not appeal the ruling. It is binding on Development Co. and this Court.

3. <u>Res Judicata</u>. Lastly, preclusive principles prevent the Court from disturbing or setting aside the PRC's order.

> "[R]es judicata is designed to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, ... prevent [ ] inconsistent decisions, [and] encourage reliance on adjudication." *Computer One, Inc. v. Grisham & Lawless, P.A.,* 2008–NMSC–038, ¶ 31, 144 N.M. 424, 188 P.3d 1175 (alterations in original) (internal quotation marks and citation omitted). Federal law and New Mexico law are consistent on the general standards governing claim preclusion. *Deflon v. Sawyers,* 2006–NMSC–025, ¶ 2, 139 N.M. 637, 137 P.3d 577. A party asserting res judicata or claim preclusion must establish that (1) there was a final judgment in an earlier action, (2) the earlier judgment was on the merits, (3) the parties in the two suits are the same, and (4) the cause of action is the same in both suits. *Kirby,* 2010–NMSC–014, ¶ 61, 148 N.M. 106, 231 P.3d 87.

*Potter v. Pierce*, 342 P.3d 54, 57 (N.M. 2015). The only colorable argument for holding that res judicata does not apply is that Development Co. was not a party to the PRC proceeding that resulting in the 2010 Order. However, the Court holds that Development Co. was in privity with Utility Co. with respect to the PRC's 2010 order and therefore is bound by it.[19] Development Co. was intimately involved in the Utility Co.'s 1991 application to become a regulated utility; among other things, Development Co. owned all of the utility assets and had been providing utility services for years. The PRC's 1993 order is the one Development Co. flouted when it refused to convey the Old Tank Land to the Utility Co. Until Stephen Blanco's ouster from the Development Co.'s management in March 2009, Development Co. and Utility Co. worked closely together (for better or worse). There is nothing unfair about holding that Development Co. was in privity with Utility Co. with respect to the 2010 PRC order. Given privity, res judicata prevents the Court from looking behind the 2010 PRC order.

---

[19] *See, e.g., Fogelson v. Wallace*, 406 P.3d 1012 (N.M. App. 2017) ("[p]rivity requires, at a minimum, a substantial identity between the issues in controversy and showing that the parties in the two actions are really and substantially in interest the same.") (citations omitted).

### III. CONCLUSION

Trial of the remanded "substantial part" issue turned out to be a waste of judicial resources because Development Co. came to court with no evidence to support its position. The Trustee is entitled to a money judgment of $100,000 for Development Co.'s improper post-petition sale of the New Tank Land, but not to any additional amounts based on the Water Rights Paragraphs. The Court will not revisit its earlier judgment, affirmed by the district court, awarding the Trustee $168,000 in connection with the Old Tank Land. The Court will enter a separate final judgment consistent with the foregoing.

_____
Honorable David T. Thuma
United States Bankruptcy Judge

Entered: October 25, 2019
Copies to: Electronic notice recipients